Benham, Justice.
*370 In Smith v. State , 259 Ga. 135 (1), 377 S.E.2d 158 (1989), this Court held that, once certain procedural requirements are satisfied, a defendant in a sexual-offense prosecution may adduce evidence at trial that the complaining witness has made prior false accusations of sexual misconduct and, further, that such evidence is admissible both to attack the credibility of the victim and as substantive evidence tending to prove that the conduct underlying the charges did not occur. In its decision below, the Court of Appeals followed Smith to reverse the trial court, which had excluded such evidence from being presented during trial under OCGA § 24-4-403. See Burns v. State , 345 Ga. App. 822, 813 S.E.2d 425 (2018). We subsequently granted certiorari review to reconsider Smith , and, though we conclude that it was wrongly decided, we affirm the ultimate judgment of the Court of Appeals reversing the trial court.
Appellee James Phillip Burns was charged with aggravated sexual battery, aggravated sodomy, and incest. The charges followed the discovery of a social-media message written by Burns' step-daughter, K.R., detailing an alleged July 2015 sexual encounter with Burns. The message also included the following statement: "And my brother's best friend tried to rape me." K.R. later acknowledged that the attempted-rape statement was "made up," and the State moved in limine to prevent Burns from mentioning it at trial. The trial court granted the State's motion, concluding "that the probative value of the statement in question is substantially outweighed by the danger of unfair prejudice and confusion of the issues and is inadmissible under OCGA § 24-4-403." The trial court certified the issue for immediate review, and the Court of Appeals granted Burns's application for interlocutory appeal.
The Court of Appeals reversed the trial court, holding, in relevant part, that the trial court had misapplied the exclusionary provision in OCGA § 24-4-403 but that, also, "under the principles recognized in Smith , this exclusionary rule must yield to greater constitutional concerns," namely, a "defendant's right of confrontation and right to present a full defense." (Punctuation and citations omitted.) Burns , 345 Ga. App. at 825, 813 S.E.2d 425. The Court of Appeals also indicated that these "constitutional concerns" resulted in the evidence being admissible under OCGA § 24-6-608 (b). We subsequently granted the State's petition for certiorari, asking the parties to address the following questions:
1. This Court held in [ Smith ] that evidence of prior false allegations by a victim of sexual misconduct is admissible in a criminal case regarding alleged sexual misconduct. Was our decision one of constitutional law or of evidence law?
2. If our holding in Smith was one of constitutional law, was it rightly decided? If it was instead an evidentiary holding, does it remain good law under the new Evidence Code?
3. Given the answers to the first two questions, in a criminal proceeding involving alleged sexual misconduct, does OCGA § 24-4-403 apply to evidence of prior false accusations of sexual misconduct made by the victim or a person close to the victim?
We address each legal question in turn, applying a de novo standard of review. See Fulton County Bd. of Educ. v. Thomas , 299 Ga. 59, 61, 786 S.E.2d 628 (2016).
1. As relevant here, our decision in Smith was two-fold. We first held that, as a threshold matter, Georgia's Rape Shield statute, as it then existed, "does not prohibit testimony of previous false allegations by a victim" because such "evidence does not involve the victim's past sexual conduct but rather the victim's propensity to make false statements regarding sexual misconduct." Smith , 259 Ga. at 137, 377 S.E.2d 158. We then held, in response to the State's argument that other parts of our then-existing Evidence Code prohibited the admission of false-allegation evidence, that "evidentiary rule[s] preventing evidence of specific acts of untruthfulness must yield to a defendant's right of confrontation and right to present a full defense." Id. In conclusion, we announced that evidence of a prior false allegation was admissible during trial following " 'a threshold determination [made by the trial court outside the presence *371 of the jury] that a reasonable probability of falsity exists.' " Id. (quoting Clinebell v. Commonwealth , 235 Va. 319, 368 S.E.2d 263, 266 (1988) ).
Though the parties disagree as to the exact nature of our holdings in Smith , the language of the opinion combined with the authority cited therein reflect that the decision was premised on both evidence law and constitutional law. The first holding was a straight-forward, plain-language application of the then-existing Rape Shield statute, which is a rule of evidence. See OCGA § 24-23-3 (2010) (discussing admissibility of "evidence relating to the past sexual behavior of the complaining witness"). The second holding, though nebulous, appears to invoke the Sixth and Fourteenth Amendments. Indeed, in response to Smith's argument that his constitutional rights would be violated if such evidence were ruled inadmissible, this Court indicated that the rules of evidence "must yield" to the right of confrontation, as well as the right to present a full defense. Smith , 259 Ga. at 137, 377 S.E.2d 158. Notably, the authority cited in Smith regarding the admissibility of false-allegation evidence squarely relies on the two relevant constitutional provisions. See Clinebell , 368 S.E.2d at 266 ("At least in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination. [cit.] Cross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process."); Commonwealth v. Bohannon , 376 Mass. 90, 378 N.E.2d 987, 990-991 (1978) ("When evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied.").
2. We next consider the propriety of our holdings in Smith . We must first consider whether the evidentiary holding of Smith remains good law following the recent overhaul of Georgia's Evidence Code. We must also consider whether the constitutional holding in Smith was correctly decided.[1] As we discuss below, though the evidentiary holding of Smith has survived the enactment of Georgia's new Evidence Code, the constitutional holding was wrongly decided.
The Rape Shield statute has been part of Georgia law since 1976, see Ga. L. 1976, p. 741. Since that time, the General Assembly has reworked the exceptions to the provision (which are irrelevant to our current inquiry) and amended the statute to broaden the offenses to which it applies, see White v. State , 305 Ga. 111, 116, n. 4, 823 S.E.2d 794 (2019), but the core language remains unchanged, providing that
evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses[,] except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.
OCGA § 24-4-412 (a). Compare Ga. L. 1976, p. 741, § 1 (using nearly identical language). Indeed, as we recently noted, "when the General Assembly adopted Georgia's new Evidence Code in 2011 ... it did not adopt the federal counterpart to Georgia's Rape Shield statute." White , 305 Ga. at 116, 823 S.E.2d 794. Instead, the language of the current iteration of the statutory provision remains largely identical to the statute it replaced. Id. at 116, 823 S.E.2d 794.
"If there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting that former provision applies."
*372 State v. Almanza , 304 Ga. 553, 557, 820 S.E.2d 1 (2018). Here, the pertinent language of the Rape Shield statute - which is not materially identical to the Federal Rule - has remained substantively consistent for decades and has been carried over into the new Evidence Code; the focus of this provision continues to be the exclusion of evidence concerning the "past sexual behavior of the complaining witness." Our evidentiary holding in Smith is consistent with the decades-old plain language of the Rape Shield statute and remains good law in the era of the new Evidence Code. See Morgan v. State , 337 Ga. App. 29 (1), 785 S.E.2d 667 (2016) (recognizing that the new iteration of the Rape Shield statute does not prohibit false-allegation evidence).
Now, turning to the constitutional portion of our holding in Smith , the opinion seemingly relies on the Sixth and Fourteenth Amendments to create a per se rule of admissibility for evidence of prior false allegations where falsity has been established, notwithstanding other rules of evidence. These constitutional provisions demand no such rule.
The Sixth Amendment includes a compact statement of the rights necessary to a full defense:
In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
Faretta v. California , 422 U. S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting the Sixth Amendment). "In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it." Id.
With respect to the right to confrontation, the Sixth Amendment "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." Pennsylvania v. Ritchie , 480 U. S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) Delaware v. Fensterer , 474 U. S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). See also Nicely v. State , 291 Ga. 788, 733 S.E.2d 715 (2012) (noting that the "Sixth Amendment right to confrontation ... is not an absolute right that mandates unlimited questioning by the defense" (punctuation and citations omitted)).
As to the due process clause in the Fourteenth Amendment, it "guarantees criminal defendants a meaningful opportunity to present a complete defense." (Punctuation and citations omitted.) Crane v. Kentucky , 476 U. S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather, is subject to reasonable restrictions." United States v. Scheffer , 523 U. S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). "[T]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence ." (Emphasis supplied.) Taylor v. Illinois , 484 U. S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). In the exercise of these rights under the Sixth and Fourteenth Amendments, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers v. Mississippi , 410 U. S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).
"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " (Quotations omitted.) Scheffer , 523 U. S. at 308, 118 S.Ct. 1261. As the Supreme Court of the United States recently recognized, only "rarely" has that Court concluded that "the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."
*373 Nevada v. Jackson , 569 U. S. 505, 509, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013).
What this Court failed to recognize in Smith is that, though our statutory rules of evidence may "operate[ ] to prevent a criminal defendant from presenting relevant evidence, [and consequently diminish] the defendant's ability to confront adverse witnesses and present a defense ... [t]his does not necessarily render the statute[s] unconstitutional." Michigan v. Lucas , 500 U. S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). States may lawfully "exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability - even if the defendant would prefer to see that evidence admitted." Crane , 476 U. S. at 690, 106 S.Ct. 2142.
Our sweeping decision in Smith lacked nuance. The holding was reached without any meaningful analysis and without consideration of whether the relevant rules of evidence (or other applicable statutes) could pass muster under the Sixth and Fourteenth Amendments; our blanket holding that rules of evidence must "yield" to constitutional concerns - and must permit the admission of evidence that may be considered for both impeachment and as substantive evidence - was unwarranted and incorrect.[2] Our conclusion in this regard is bolstered by language from Nevada v. Jackson , in which the Supreme Court of the United States explained, in the context of the application of state evidence rules that prevented a rape defendant from presenting evidence of the victim's prior false allegations of sexual assault, that it has never held that the Confrontation Clause "entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes." Nevada v. Jackson , 569 U. S. at 512, 133 S.Ct. 1990.
Our conclusion that Smith was wrongly decided does not end our inquiry because we must also consider the issue of stare decisis before determining whether to overrule the opinion. See Lejeune v. McLaughlin , 296 Ga. 291 (2), 766 S.E.2d 803 (2014).
Under the doctrine of stare decisis, courts generally stand by their prior decisions, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Stare decisis, however, is not an inexorable command. Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes. In reconsidering our prior decisions, we must balance the importance of having the question decided against the importance of having it decided right . To that end, we have developed a test that considers the age of precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning. The soundness of a precedent's reasoning is the most important factor.
(Punctuation and citations omitted; emphasis in original.) Olevik v. State , 302 Ga. 228, 244-245, 806 S.E.2d 505 (2017).
Here, the stare decisis factors favor that we overrule Smith . As we have already established, Smith was wrongly decided "based on a misunderstanding of federal constitutional law" and, as such, the "error is not capable of correction by the People of this State." Lejeune , 296 Ga. at 298, 766 S.E.2d 803. The Smith decision offered little meaningful analysis to reach its constitutional holding, opting instead for a string cite of decisions from other states. Though the opinion is approximately 30-years old, we have overruled even older decisions. See, e.g., Lejeune , supra (overruling nearly 44-year-old decision based on misapprehension of federal constitutional law).
As to the third factor, the decision does not involve substantial reliance interests. See Savage v. State , 297 Ga. 627, 641 (5) (b), 774 S.E.2d 624 (2015) (recognizing that substantial *374 reliance interests are most common in contract and property cases). Overruling Smith neither impedes the State's ability to prosecute sex-offenses nor extinguishes a defendant's statutory or constitutional rights in such cases. Finally, we cannot say that any "workability" of Smith is sufficient to preserve the precedent. Although Smith's bright-line test is not "unworkable," neither is the alternative - applying the familiar and usual rules of evidence, which trial courts routinely do every day. Accordingly, we overrule our constitutional holding in Smith , as well as similar holdings in Benton v. State , 265 Ga. 648 (5), 461 S.E.2d 202 (1995) ; Ray v. State , 345 Ga. App. 522 (4), 812 S.E.2d 97 (2018) ; Tyson v. State , 232 Ga. App. 732 (2), 503 S.E.2d 640 (1998) ; Peters v. State , 224 Ga. App. 837 (4), 481 S.E.2d 898 (1997) ; Hines v. State , 221 Ga. App. 193, 193-195, 470 S.E.2d 787 (1996) ; Humphrey v. State , 207 Ga. App. 472 (2), 428 S.E.2d 362 (1993) ; Strickland v. State , 205 Ga. App. 473, 473-474, 422 S.E.2d 312 (1992) ; Ellison v. State , 198 Ga. App. 75 (1), 400 S.E.2d 360 (1990) ; and, Shelton v. State , 196 Ga. App. 163 (4), 395 S.E.2d 618 (1990).[3]
3. Finally, we must now delve into how OCGA § 24-4-403 applies to evidence of prior false allegations by a complaining witness in a sexual-offense prosecution. Though the trial court recognized that K.R.'s attempted-rape statement was false, the court excluded the evidence under OCGA § 24-4-403, determining that any "probative value of the statement ... is substantially outweighed by the danger of unfair prejudice and confusion of the issues." The Court of Appeals, relying on Smith , determined that OCGA § 24-4-403 does not apply to false-allegation evidence such as that at issue here. This was incorrect.
OCGA § 24-4-403[4] tracks its federal counterpart, see State v. Jones , 297 Ga. 156, 158, (773 S.E.2d 170) (2015), and, as such, "we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit."
*375 Olds v. State , 299 Ga. 65, 69, 786 S.E.2d 633 (2016). With respect to Rule 403, the Supreme Court of the United States has explained that,
[w]hile the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.
Holmes v. South Carolina , 547 U. S. 319, 326, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (specifically citing Federal Rule 403). See also Crane , 476 U. S. at 689-690, 106 S.Ct. 2142 (recognizing that the Constitution permits the exclusion of evidence that is "repetitive," that is "only marginally relevant," or that "poses an undue risk of harassment, prejudice, or confusion of the issues" (punctuation and citations omitted)). In fact, the United States Supreme Court has recognized that Rule 403 is one of "[a]ny number of familiar and unquestionably constitutional evidentiary rules [that] authorizes the exclusion of relevant evidence." Montana v. Egelhoff , 518 U. S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality decision). Accordingly, there is no constitutional impediment to applying OCGA § 24-4-403 here, and the Court of Appeals erred to the extent that it held otherwise.
That being said, "the exclusion of evidence under Rule 403 'is an extraordinary remedy which should be used only sparingly.' " (Citations omitted.) Olds , 299 Ga. at 70, 786 S.E.2d 633. "The 'major function' of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Punctuation and citations omitted.) Hood v. State , 299 Ga. 95 (4), 786 S.E.2d 648 (2016). Though a decision under Rule 403 is "committed principally to the discretion of the trial court," Olds , 299 Ga. at 70, 786 S.E.2d 633, the trial court's decision in this instance was an abuse of discretion, and the Court of Appeals was ultimately correct to reverse the judgment of the trial court on this point.
In a sexual-offense prosecution, where, like here, the case comes down to witness credibility, evidence that the complaining witness has made a prior false allegation of sexual misconduct is not of "scant" probative force. See Olds , 299 Ga. at 76, 786 S.E.2d 633 (recognizing that the probative value of disputed evidence depends, in part, upon the need for such evidence). As to the issue of "unfair prejudice," the primary concern is that a jury will decide a case on "an improper basis, commonly, though not necessarily, an emotional one." (Punctuation and citations omitted.) Pierce v. State , 302 Ga. 389, 394-395, 807 S.E.2d 425 (2017). Here, it is unclear how K.R.'s admittedly false statement would inflame passions of the jury or inspire an emotional decision rather than facilitate a reasoned decision based on the evidence and determinations of credibility. Finally, with respect to "confusion of the issue," this prosecution involves one defendant and a single incident that allegedly occurred in July 2015. The false allegation at hand plainly describes an event involving someone else at a separate time; there is no basis for confusion. As such, OCGA § 24-4-403 does not pose a bar to the jury learning about K.R.'s false statement.[5]
Judgment affirmed.
All the Justices concur, except Melton, C.J., not participating, and Bethel and Ellington, JJ., disqualified.

The breadth of the language in Smith - that vague "constitutional concerns" seemingly trump the applicable rules of evidence - prevents us from merely concluding that the entire decision was somehow abrogated by the enactment of the new Evidence Code. Indeed, the Court of Appeals appears to have understood that the constitutional holding in Smith was not abrogated by the enactment of the new rules of evidence. See Morgan v. State , 337 Ga. App. 29 (1), 785 S.E.2d 667 (2016).

We do not mean to be understood to say that all Georgia rules of evidence (or other applicable statutes) pass muster under the Sixth and Fourteenth Amendments in all circumstances, but only that those provisions do not require that all false-allegation evidence categorically be admitted without regard for the rules of evidence.

We also disapprove the following cases to the extent that they cite or rely on the constitutional holding in Smith : Postell v. State , 261 Ga. 842 (2), 412 S.E.2d 831 (1992) ; Frye v. State , 344 Ga. App. 704, 708-709, 811 S.E.2d 460 (2018) ; Morgan v. State , 337 Ga. App. 29 (1), 785 S.E.2d 667 (2016) ; Priest v. State , 335 Ga. App. 754 (1), 782 S.E.2d 835 (2016) ; Dean v. State , 321 Ga. App. 731 (2), 742 S.E.2d 758 (2013) ; Osborne v. State , 291 Ga. App. 711 (2), 662 S.E.2d 792 (2008) ; Gibbs v. State , 287 Ga. App. 694 (1) (a) (i), 652 S.E.2d 591 (2007) ; Roberts v. State , 286 Ga. App. 346, 347, 648 S.E.2d 783 (2007) ; Menard v. State , 281 Ga. App. 698 (3), 637 S.E.2d 105 (2006) ; Frazier v. State , 278 Ga. App. 685 (2) (a), 629 S.E.2d 568 (2006) ; Eley v. State , 266 Ga. App. 45 (1), 596 S.E.2d 660 (2004) ; Long v. State , 265 Ga. App. 605 (2), 595 S.E.2d 93 (2004) ; Hall v. State , 254 Ga. App. 131 (1), 561 S.E.2d 464 (2002) ; Williams v. State , 251 Ga. App. 137, 140, 553 S.E.2d 823 (2001) ; Mills v. State , 251 Ga. App. 39 (2), 553 S.E.2d 353 (2001) ; Banks v. State , 250 Ga. App. 728 (1), 552 S.E.2d 903 (2001) ; Mann v. State , 244 Ga. App. 756 (2), 536 S.E.2d 608 (2000) ; Pittman v. State , 243 Ga. App. 564 (2) (b), 533 S.E.2d 769 (2000) ; Long v. State , 241 Ga. App. 370 (4), 526 S.E.2d 875 (1999) ; Weldy v. State , 239 Ga. App. 849 (1), 521 S.E.2d 858 (1999) ; Trusty v. State , 237 Ga. App. 839 (2), 517 S.E.2d 91 (1999) ; Patterson v. State , 237 Ga. App. 80 (1), 514 S.E.2d 873 (1999) ; Gilmer v. State , 234 Ga. App. 309 (2), 506 S.E.2d 452 (1998) ; Kelley v. State , 233 Ga. App. 244 (5), 503 S.E.2d 881 (1998) ; Wand v. State , 230 Ga. App. 460 (2) (c), 496 S.E.2d 771 (1998) ; Hodges v. State , 229 Ga. App. 475 (1), 494 S.E.2d 223 (1997) ; Gravitt v. State , 228 Ga. App. 760 (2), 492 S.E.2d 739 (1997) ; Ney v. State , 227 Ga. App. 496 (2), 489 S.E.2d 509 (1997) ; Hicks v. State , 222 Ga. App. 828 (1), 476 S.E.2d 101 (1996) ; Lane v. State , 223 Ga. App. 740 (5), 479 S.E.2d 350 (1996) ; Eason v. State , 215 Ga. App. 614 (1), 451 S.E.2d 820 (1994) ; Chambers v. State , 213 Ga. App. 284 (1) (a), (b), 444 S.E.2d 833 (1994) ; Ingram v. State , 211 Ga. App. 252 (5), 438 S.E.2d 708 (1993) ; Berry v. State , 210 Ga. App. 789 (1), 437 S.E.2d 630 (1993) ; Allen v. State , 210 Ga. App. 447 (1), 436 S.E.2d 559 (1993) ; Wells v. State , 206 Ga. App. 513 (2), 426 S.E.2d 231 (1992) ; Yebra v. State , 206 Ga. App. 12 (1), 424 S.E.2d 318 (1992) ; Chambers v. State , 205 Ga. App. 78 (2), 421 S.E.2d 326 (1992) ; Hall v. State , 204 Ga. App. 469 (2), 419 S.E.2d 503 (1992) ; Howard v. State , 200 Ga. App. 188 (1), 407 S.E.2d 769 (1991) ; Postell v. State , 200 Ga. App. 208 (4) (a), 407 S.E.2d 412 (1991) ; Shelton v. State , 199 Ga. App. 506, 506-507, 405 S.E.2d 123 (1991) ; Calloway v. State , 199 Ga. App. 272 (3), 404 S.E.2d 811 (1991) ; Dempsey v. State , 197 Ga. App. 674 (3), 399 S.E.2d 239 (1990) ; Spivey v. State , 197 Ga. App. 11 (3), 397 S.E.2d 588 (1990) ; Coxwell v. State , 195 Ga. App. 751 (2), 395 S.E.2d 38 (1990).

"Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We note that, though our analysis concludes with the application of OCGA § 24-4-403, there may be other rules of evidence or law which bear on the admission or exclusion of the disputed evidence.