**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2025**

# In the Court of Appeals of Georgia

A24A1562. MUNIZ v. THE STATE.

MERCIER, Chief Judge.

Following a jury trial, Victor Hugo Muniz was convicted in Cobb County Superior Court of aggravated sexual battery and child molestation for acts against minor victims E. C. and Y. F. Muniz appeals the denial of his motion for new trial, arguing that the trial court erred in excluding evidence and committed a sentencing error. For reasons that follow, we affirm.

1. The State indicted Muniz for crimes against E. C. and Y. F. on December 10, 2015. Muniz subsequently filed a motion to introduce at trial evidence that Y. F. had falsely accused another individual of molesting her, then retracted the allegation. He asserted that such evidence was relevant to attack Y. F.'s credibility and to show that

the allegations against him were also false. Finding the evidence admissible, the trial court granted Muniz's motion on August 25, 2016.

On December 20, 2016, the State asked the trial court to reconsider its ruling in light of additional information. Approximately two weeks later, and before the trial court ruled on the reconsideration request, the State obtained a superseding indictment against Muniz, adding new counts and modifying the dates that Muniz was alleged to have committed the offenses. The State nolle prossed the original indictment, and Muniz agreed to proceed under the superseding indictment with a previously set trial date of January 9, 2017.

The trial court held a pretrial hearing on the State's motion for reconsideration and request to exclude the prior-accusation evidence. On the morning of the first day of trial, the trial court orally announced its new finding that the evidence was inadmissible and would be excluded. The trial court did not issue a written order setting forth its evidentiary ruling until February 28, 2024, when it explained that the ruling had been "partially reduced to writing at the time of its pronouncement [on the morning of trial, but] the [c]ourt ha[d] been unable to locate the finished order in the [c]lerk's file."

(a) Muniz now challenges the trial court's exclusion of the prior accusation evidence, arguing that the court lacked authority to reconsider its original determination that the evidence was admissible. He notes that by the time the State filed its motion for reconsideration in December 2016, the term of court in which the trial court first ruled had ended. See OCGA § 15-6-3 (11) (terms of Cobb Superior Court begin the "[s]econd Monday in January, March, May, July, September, and November"). And he claims that the trial court was barred from altering its ruling under the "end-of-term rule," which "limits a trial court's inherent power to revoke interlocutory rulings in criminal cases to the end of the term in which the ruling was entered." *Thomas v. State*, 319 Ga. 123, 125 (2) (902 SE2d 566) (2024) (citations, punctuation, and footnote omitted).

This case, however, does not implicate the end-of-term rule. The trial court entered its original order admitting the evidence in the proceeding commenced by the first indictment (Case No. 15-9-4612). Following that determination, the State filed a superseding indictment, which "initiated an entirely separate proceeding." *State v. Outen*, 324 Ga. App. 457, 464 (2) (751 SE2d 109) (2013). The subsequent ruling excluding the evidence was entered in the new case created by the superseding

indictment (Case No. 17-9-0068). The two evidentiary rulings, therefore, were made in entirely different cases. See *Brown v. State*, 322 Ga. App. 446, 449 (1) n.4 (745 SE2d 699) (2013) ("Each of the indictments here initiated a separate proceeding in the trial court: the First Indictment initiated Case No. 1190058, and the Second Indictment initiated Case No. 1192482."). Although Muniz characterizes the ruling on appeal as a reconsideration of an earlier ruling in a different term, it was, in fact, the trial court's first ruling on the issue in the new criminal proceeding initiated by the superseding indictment.

Muniz has cited no authority, and we know of none, holding that the end-of-term rule limits a trial court's ability to make a pretrial evidentiary ruling in a new criminal proceeding simply because, in another proceeding on an earlier indictment, the trial court ruled differently. Accordingly, the end-of-term rule did not bar the trial court from excluding the prior-accusation evidence.[1]

---

[1] Briefing in this appeal focuses on the broader question of whether, and under what circumstances, the end-of-term rule may prohibit a trial court from reconsidering interlocutory evidentiary rulings in criminal cases before the trial has commenced. Because the end-of-term rule does not apply here, we need not reach that broader question.

(b) The dissent takes no issue with this conclusion. It argues, however, that we must nevertheless vacate the trial court's ruling because the court used the wrong standard of review in finding the evidence inadmissible. We disagree.

First, questions regarding the standard of review used by the trial court are not properly before us. Muniz's claim on appeal focuses *solely* on the trial court's authority to reevaluate the admissibility of the evidence. He does not challenge the substantive merits of the ruling or argue that the trial court used an improper review standard, and neither party has addressed the issue raised by the dissent. As an appellate court, we should not "speculate or make arguments on [an appellant's] behalf; to do so would improperly change this [C]ourt's role from disinterested decision-maker to appellate advocate." *Pierce v. State*, 251 Ga. App. 600, 605 (5) (554 SE2d 787) (2001); see also *Harmon v. Innomed Technologies*, 309 Ga. App. 265, 270 (2) (709 SE2d 888) (2011) (same).

Moreover, even if Muniz had questioned the standard of review employed by the trial court, the record shows that the court ultimately used the proper standard. At the time of trial in 2017, the admissibility of allegedly false prior accusation evidence was governed by the "reasonable probability of falsity test" established by

*Smith v. State*, 259 Ga. 135, 137-38 (1) (377 SE2d 158) (1989). That test required a court to make a "threshold determination outside the presence of the jury that a reasonable probability of falsity exists" before admitting such evidence. Id. at 137 (1) (citation and punctuation omitted). Several years later, the Supreme Court eliminated the *Smith* test, concluding that, instead of considering whether a reasonable probability of falsity exists, a trial court should analyze the admissibility of allegedly false prior accusations under "the familiar and usual rules of evidence[.]" *State v. Burns*, 306 Ga. 117, 124 (2) (829 SE2d 367) (2019); see also *Gallegos-Munoz v. State*, 319 Ga. 803, 812 (2) (c) (906 SE2d 711) (2024) (explaining *Burns*).

Without dispute, the trial court applied the then-controlling (but now defunct) *Smith* test when it first revisited the issue in 2017 and excluded the evidence. By the time it entered contemporaneous written orders in 2024 memorializing its pre-trial evidentiary ruling and denying Muniz's motion for new trial, however, the trial court recognized that the law had changed. In those orders, the trial court reiterated that the evidence did not meet *Smith*'s reasonable probability of falsity test, but it also reviewed the admissibility of the evidence under applicable evidentiary rules.

6

To this end, the trial court first performed its gate-keeping role pursuant to OCGA § 24-1-104, addressing preliminary questions of admissibility and noting that such questions must be resolved under the preponderance of the evidence standard. See OCGA § 24-1-104 (a); *Gallegos-Munoz*, 319 Ga. at 816 (3) (e) (describing gate-keeping role). The allegedly false prior accusation was only relevant to Muniz's guilt if it was false — a conditional fact that needed to be addressed in resolving its admissibility. See OCGA § 24-1-104 (b) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."); *Gallegos-Munoz*, 319 Ga. at 816 (3). The trial court properly determined that, as the proponent of the evidence, Muniz bore the burden of demonstrating falsity by a preponderance of the evidence. See *Wilson v. State*, 312 Ga. 174, 185 (1) (c) (860 SE2d 485) (2021) ("Because the State was the proponent of this evidence, the State bore the burden of producing evidence" on factual issue required for its admissibility); *Kemp v. State*, 303 Ga. 385, 393 (2) (b) (810 SE2d 515) (2018) ("proponent has to make a 'prima facie' case of conspiracy to admit co-conspirator's statements"). Reviewing the evidence in this light, the trial court concluded that Muniz had not

"shown by a preponderance of evidence that [the] allegations [were] false." Although the trial court also found no reasonable probability of falsity, the court explicitly considered the evidence under the preponderance standard of OCGA § 24-1-104, deeming it irrelevant on the question of guilt.

Next, the trial court examined whether — to the extent the prior accusation and subsequent retraction were relevant to Y. F.'s credibility — the evidence should be excluded under OCGA § 24-4-403. See OCGA § 24-1-104 (e) ("This Code section shall not limit the right of a party to introduce before the jury evidence relevant to weight or credibility."). Acknowledging "the considerable evidence that [Y. F.'s] allegations against [the other individual] are in fact true," the trial court concluded that the prior accusation offered little value in a credibility attack against Y. F. And it found a strong likelihood that introducing the prior accusation would unnecessarily create a "trial within a trial" and possibly produce "spillover" evidence prejudicial to Muniz. Ultimately, the trial court determined that "the probative value of [Y. F.'s] 'false allegations' (which [the court had] already concluded are not likely to be actually false) is substantially outweighed by the danger of unfair prejudice, confusion

8

of the issues and misleading the jury as to the purpose of the contested evidence." The trial court thus excluded the evidence pursuant to OCGA § 24-4-403.

The Supreme Court has made clear that trial courts must review the admissibility of allegedly false prior accusations under the provisions of Georgia's new evidence code. See *Gallegos-Munoz*, 319 Ga. at 815 (2) (e). The trial court engaged in the required analysis, assessing Y. F.'s prior allegations pursuant to the general rules of evidence and deeming the evidence inadmissible. Although the trial court also reviewed the evidence under the old *Smith* framework, we cannot ignore the court's proper analysis or vacate simply because its alternative ground for decision is no longer valid. See, e.g., *Wyno v. Lowndes County*, 331 Ga. App. 541, 545 (2) (771 SE2d 207) (2015) (because the trial court properly dismissed a complaint on a particular ground, "we need not address [appellant's] claims of error regarding the trial court's alternative ground of dismissing the action").

2. In his second claim of error, Muniz challenges the Fourth Amendment waiver included in the probationary portion of his sentence. The trial court imposed concurrent terms of imprisonment followed by one year of probation on several counts. The sentence specified that Muniz's probation would be subject to special

conditions applicable to sex offenders, including the following Fourth Amendment waiver involving searches:

> You shall submit to a search of your person, property, residence, or vehicle at any time of the day or night, with or without consent or a search warrant, whenever requested to do so by a Community Supervision Officer or any other peace officer. You specifically consent to the use of any contraband seized as evidence in a probation violation proceeding.

Muniz argues that the trial court improperly included the Fourth Amendment waiver in the sentence without his consent or knowledge. At the sentencing hearing, however, the trial court stated that "sex offender conditions" would be imposed, then briefly outlined the conditions for Muniz. Within that discussion, the trial court explained that Muniz "would be waiving [his] Fourth Amendment rights in terms of the search of your person, residence or vehicle." The trial court asked defense counsel whether she wanted the court to read aloud the special conditions in their entirety, to which defense counsel responded: "No, your honor. We'll go over that." The trial court instructed the prosecutor and defense counsel to review and, if no errors were found, sign the sentencing sheet, which set forth the waiver and all other special

conditions. The court further noted that Muniz should also sign the sentencing sheet but was not required to do so:

> If he doesn't want to sign the sentence sheet, he's not required to. We can put refused to sign. That's fine. Unless you have an objection to signing it as to form. The attorney can sign it.

Defense counsel indicated that she would "write in his refusal to sign[,]" and the sentencing sheet reflects that refusal. She did not object to the probation conditions, the Fourth Amendment waiver, or the form of the sentence. The sentencing hearing concluded with defense counsel stating that no additional matters needed to be discussed. And she testified at the hearing on Muniz's motion for new trial that she reviewed the sentencing sheet with Muniz.

"[A] defendant's Fourth Amendment rights can be waived as a condition of probation." *Cummings v. State*, 345 Ga. App. 702, 709 (4) (814 SE2d 806) (2018). Furthermore, if "the defendant is represented by counsel at sentencing and the validity of the waiver is not challenged at that time, the defendant has forfeited his right to challenge the waiver." Id. at 709-710 (4). The record shows that the trial court specifically referenced the Fourth Amendment waiver at the hearing before sentence was imposed, defense counsel raised no objection to the waiver, she declined the trial

11

court's offer to read the exact wording of the waiver into the record, and she signed the sentencing sheet containing the waiver. "[C]ounsel's failure at that time to raise any issue with the Fourth Amendment waiver is fatal to [this] argument on appeal." Id. at 710 (4).

*Judgment affirmed. Pipkin, J., concurs and McFadden, P. J., dissents.*

A24A1562. MUNIZ v. THE STATE.

McFADDEN, Presiding Judge, dissenting.

I agree with the majority that the trial court had the authority to rule on the admissibility of the prior-accusation evidence in the new proceeding. But the trial court did so using a legal test that our Supreme Court has disavowed. So I respectfully dissent.

For that reason, I would vacate the trial court's denial of Muniz's motion for new trial and remand for the trial court to consider that motion under the applicable evidentiary standards. See *Gallegos-Munoz v. State*, 319 Ga. 803, 804 (906 SE2d 711) (2024). I would not reach Muniz's challenge to his sentence, because the outcome on remand might render that challenge moot. See *Elkins v. State*, 306 Ga. 351, 352 n. 1 (830 SE2d 217) (2019).

The rule now disavowed by our Supreme Court — for a second time — is the judge-made rule that required a defendant in a molestation case to demonstrate a reasonable probability of falsehood as a prerequisite to introduction of evidence of a prior false allegation. The trial court excluded such evidence here and did so in reliance on that rule. On appeal Muniz challenges that exclusion.

But, as the majority says, he does not argue that the rule had been disavowed. He did not so argue because, at the time the parties' briefs were filed, the most recent appellate decision on point was an erroneous decision by this court that misread our Supreme Court's first disavowal of that rule and declared that rule to still be good law.

It is fair to say that Muniz ought to have filed a supplemental brief. And the majority is right to reaffirm that judges should remain impartial. But we have a countervailing duty to decide cases correctly. See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) ("where the enumeration of errors filed in the appellate court identifies the trial court ruling asserted to be error, the error relied upon is sufficiently set out separately to require the appellate court to shoulder its constitutional responsibility to be a court of review, and its statutory duty to bring about a decision on the merits of every case appealed") (citations, punctuation, and footnote omitted). And in this case, our responsibility for the unsettled state of the law tips the balance in favor of Muniz.

1. *Our responsibility for the unsettled status of the reasonable-probability-of-falsehood test*

In 1989 our Supreme Court created the reasonable-probability-of-falsehood test. *Smith v. State*, 259 Ga. 135, 137-138 (1) (377 SE2d 158) (1989). *Smith* held that a trial

court, before admitting prior-accusation evidence, was required to "make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists." Id. at 137-138 (1) (citation and punctuation omitted).

On January 1, 2013 our current Evidence Code took effect. It "precludes courts from promulgating or perpetuating judge-made exclusionary rules of evidence. . . ." *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019). So, although it would not be disavowed for several years, *Smith*'s reasonable-probability-of-falsehood test ceased to be good law in 2013. Nevertheless, this court continued to follow it. E.g., *Ray v. State*, 345 Ga. App. 522, 529 (4) (812 SE2d 97) (2018), overruled in part by *State v. Burns*, 306 Ga. 117, 124 (2) (829 SE2d 367) (2019); *Morgan v. State*, 337 Ga. App. 29, 31 (1) (785 SE2d 667) (2016), overruled in part by *Burns*, 306 Ga. at 124 (2) n. 3.

So in 2017, when the trial court addressed the issue during trial, it is understandable that the trial court and the parties believed that *Smith* was still good law.

In 2019 our Supreme Court formally overruled *Smith*, as well as similar holdings in numerous cases following it. *Burns*, 306 Ga. at 124 (2).

But in a 2021 divided opinion we erroneously held that our Supreme Court's decision in *Burns* had not "rejected the rule established in *Smith*. . . ." *Vallejo v. State*,

3

362 Ga. App. 33, 36 (1) (865 SE2d 640) (2021), overruled in part by *Gallegos-Munoz*, 319 Ga. at 812 (2) (c) n. 9.

So in the first eight months of 2024 our erroneous rulings in *Vallejo* and decisions that followed *Vallejo*, e. g., *Gallegos-Munoz v. State*, 369 Ga. App. 277, 281-282 (893 SE2d 176) (2023), were the last word on the *Smith* rule. The trial court reaffirmed the evidentiary ruling before us in an order denying Muniz's motion for new trial entered in February 2024. The parties filed their appellate briefs in July 2024.

Then in September 2024, our Supreme Court overruled *Vallejo* in *Gallegos-Munoz*, 319 Ga. at 812 (2) (c) n. 9.

In light of that history, I would apply the now-settled law as to the evidentiary issue before us.

2. *We must vacate and remand*

The majority acknowledges that "the trial court reiterated that the evidence did not meet *Smith*'s reasonable probability of falsity test[.] But the majority says that does not matter because the trial court "also reviewed the admissibility of the evidence under applicable evidentiary rules."

4

I disagree. The trial court made clear that she considered herself bound by our decisions reaffirming *Smith*. She held, "To date, the Court of Appeals has concluded that *Burns* did not overrule the threshold common-law requirement that trial courts are to first determine whether a reasonable probability of falsity exists, before moving on to the Rule 403 balancing test." "Because the trial court . . . believed incorrectly that the now-displaced probable-falsity standard adopted in *Smith* applied in this case, [she] did not conduct the analysis required by the 2013 Evidence Code." *Gallegos-Munoz*, 319 Ga. at 820 (2) (f). So we must "vacate the trial court's rulings and remand the case for further proceedings consistent with" our Supreme Court's opinion in *Gallegos-Munoz*. Id.

3. *Determination of conditional facts under OCGA § 24-1-104*

Because we must leave it to the trial court to apply *Gallegos-Munoz* in the first instance and to exercise her discretion accordingly, I don't think it's appropriate for us to analyze the other factors the trial court addressed in her new-trial order. But there is one element of the majority's analysis of those factors that nevertheless requires a response.

The majority suggests that whether the prior accusation at issue was false is "a conditional fact that needed to be addressed in resolving its admissibility" and goes

5

on to note that under OCGA § 24-1-104, conditional facts are determined by the trial court by "a preponderance of the evidence standard."

That suggestion threatens to resurrect *Smith* a second time. And it's not correct. That "Code section shall not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." OCGA § 24-1-104 (e).